The next case for argument is 24-2144, Jadue v. DHS. Mr. Eisenman, how do we pronounce the name of this case? Is it Jadue? It's Jadue. Jadue. Yes. Thank you. Good afternoon. Please, the court. I represent Mr. Jadue in this matter, standing before the court this afternoon. I'd like to discuss two issues with the court. First is the board's sanctions authority here, which we believe the board committed reversible error by not sanctioning the agency in this case for violating the statutory mixed case processing rules. And secondly, the board committed reversible error when it deferred to the agency's penalty determination, even though the agency did not consider all the mitigating factors. That is reversible error. I've been here for a long time, so I've seen the cases clarifying. And I thought we had clarified, at least, certainly, where the deciding official testifies that he would have taken the same action based on only two of the 12 specifications. That is a sufficient basis for him having considered that and for affirming him. Am I wrong about what our cases say? Not on that point. I'm not discussing the specifications. I'm referring to the penalty and the Douglas factors. And the case law says that if the agency, the deciding official, doesn't consider all the relevant factors, the board, here in this case, the administrative judge, cannot defer to the agency's decision. And what are the relevant factors that the board, that he failed to consider? In this case, the relevant factor that was not considered was the agency's personnel security unit, who determined that, based on many of the same allegations contained in the proposed removal, some of which were sustained, the personnel security unit, which evaluates whether someone gets a security clearance, decided that he should get a security clearance. And the reason that's important, number one, it happened, they decided he should get a security clearance two months before the decision was made to fire him. Secondly, the deciding official knew about this. Third, the importance of the security. Did you ask him about this in cross-examination? Did you ask the deciding official about that? We asked him if he knew about, number one, if he knew about the PSU. And he said he did know about it. And he did know about it. Secondly, secondly, he also didn't, if you look at the, the decision itself. But he said, no, the Giglio factors overwrite this. He didn't say, I'm sorry, he didn't say overrides that, but that, that dealt specifically, yes, he talked about the Giglio factors, yes, that's relevant. But what he didn't talk about was this grant of the security clearance. And what's important is that goes to the very first Douglas factor, which talks about the nature and seriousness of the offense and whether it was intentional. And the board. Did you ask him about this on cross-examination? We asked if he was aware of it and whether he'd consider it in his decision, and he said no. And it's also not listed. So he was aware of it? Yes. So he's aware of it, so it's, I know that, that they've granted him a securities clearance. And he said he didn't consider it. He said the securities clearance, that decision had nothing to do with what he had done. And they said, we've got a real problem with a law enforcement officer who's got Giglio problems. What use would he be to the agency? You could really only use him in an investigation where the person being investigated confessed. So he's essentially a useless witness. I understand what you're saying, but, but. That's pretty dispositive. I don't think it is dispositive in this notion. The mitigating factor of being granted a security clearance when, in the grant of the security clearance, the finding by the PSU unit specifically talked about, I find your, and this is appendix 1475, your explanation is credible and did not find evidence that you willfully intended to deceive or conceal. That goes specifically to Douglas factor number one, which, among other things, talks about whether the offense was intentional. But what was not considered, and I understand what you're suggesting, your honor, is that Giglio. Very much a real problem. But he didn't discuss Giglio overrides all those things. It's not discussed at all. It's not discussed in the Douglas factors analysis. Well, you say that, but it is discussed at least by the ALJ. Only with respect to whether the specification should be sustained. Not relating to the penalty. Well. And that is correct, Judge Prost, but not with respect to the penalty. Okay. You said you had two points. You're. Yes. Thank you. The other, the other was the issue of the board sanctions authority. The board has broad sanction authority under its regulations, 1201.43. Here the board said, we can't do this. The first question is whether we have jurisdiction to interfere. I think we have jurisdiction because we're not asking you to review a claim of discrimination or even Mr. Jadu has waived his discrimination. You're asking to enforce an anti-discrimination law. We're not. We're asking. The purpose of sanctions is to enforce the EEO rules about timing. Well, this is a statutory requirement, 7703, excuse me, 7702. That only the board, not the EEOC. I'm talking about the, your problem here is that the EEO took too long. That's what happened. And there's a law that says that you have to take it, do it in a certain period of time. Correct. And you're arguing that there should be a sanction on the basis that they failed to satisfy that time requirement. That's correct. That's correct. So it is, you're enforcing the discrimination law through the sanction. We're enforcing. The claim arises, your claim arises out of the law that says that the EEO has to act in a certain period of time. Yes, but it is the mixed case authority in the statute. Your claim is arising out of that anti-discrimination statute? What does the statute say? The statute doesn't provide for any sanctions. The statute, in fact, suggests that Congress had another idea because it provides in these cases that you should be able to move on to the board if the time has expired. So it's not just silence as to whether sanctions would be available. There's an explicit relief provided for your client in the statute. Understood. Understood. And that is an option that is provided to the appellant or the employee if 120 days goes by, there's no investigation, no decision. That is an option. But Mr. Jadu and others who exercise this option to file this discrimination complaint first rather than going to the board, what they get from that is a decision from the agency about the entire appealable action and an investigation which gets statements from the relevant witnesses at a time when, hopefully, memories are still good. Over time, as we know, memories fade. But that whole case, going back to Judge Klobuchar's first point, gets into the jurisdictional issue about whether or not we have jurisdiction over this case. Let me ask you, what happens if you prevail? What happens to this case? On the sanctions part, we prevailed by getting the court remands this to the board, and the board considers, in the first instance, because it didn't, whether there should be a sanction at all. Okay, so what if the board decides, and that's one of the things that the EEOC might do, which is to say, well, we're going to create an adverse inference based on that. It doesn't come back to us. Let's assume somebody wants to challenge the adverse inference. How on earth would we have jurisdiction over that question? The adverse inference wouldn't have to be with respect to the discrimination. Any of the sanctions that are available to a judge or a court, you know, in this case, it could have been default judgment, but it could have been- The sanctions that you're seeking are entirely based on exceeding the time frame with respect to the EEO requirements. So how is it not based on, related to, resting on the requirements with regard to the discrimination claim? It is based on that, but the sanction wouldn't necessarily have to be, the sanction wouldn't have to be related specifically to the discrimination claim. It could be like in the Harris case, that there's- Wait, so you're saying that we should say, yes, you have authority to do sanctions, but we're going to restrict the sanctions that you can give? I mean, how do we know? We can't control what they do, right? I mean, they can appeal it, you know, to us, but you're making rules for what they might not do or they might do. How do we know? I understand that, but section 12.11.43 doesn't, not to be too acute, doesn't discriminate between mixed cases or non-mixed cases. It applies regardless. And even though this rose out of 7702 in a discrimination claim, the evidence that gets developed is not only related to discrimination. For example, you have this investigation that is conducted and questions are asked of, for example, the deciding official. Just walk me through this. It goes back to the AJ to determine what sanction is appropriate. If the AJ decides, do you think it's within the realm of possibility that he or she would decide that I think an adverse inference should be created against the agency, that adverse inference would be applied to the discrimination claim, would it not? It could be, but actually he's waived his discrimination claim. So does that mean it can't be applied to the discrimination claim, so we're going to suddenly apply it to the other claim? I know, I mean, we're accused of making stuff up as we go along, but this really strikes me as making stuff up as we go along. It is a provision in the statute that this decision investigation has to be done. This is a board-controlled process. This isn't something that goes to the EEOC. Were the sanctions that you sought originally directed to just the discrimination claim? No.  The overall sanctions sought was default judgment, so that, yes, would cover everything. It would cover the charges, the penalty, it would cover discrimination. The adverse inference was not... Could have covered... In connection with the investigation of the discrimination complaint, did I miss something? I'm sorry, I missed the first part. What's the delay in the time? Was it with respect to the investigation of the discrimination claim? The mixed case, the mixed case, correct. That is correct. And so now, your client has abandoned his discrimination claim. He can't go back on that, right? Correct. So what would an adverse inference look like now, if you were to prevail here? An adverse inference, for example, could be that the agency couldn't present evidence that was in, for example, an affidavit that described why the deciding official, for example, didn't believe Mr. Jadu with respect to one or more of the specifications. In connection with this case that we've got before us, that doesn't deal with the discrimination, because the timeframes were exceeded in the investigation of the discrimination case. Of the appealable action, yes. That includes an affirmative defense of discrimination, yes. While your case was pending, before it got to the board, the time delay at the EEO had happened, correct? The time delay from the time he filed his formal complaint of discrimination, the agency was supposed to do the investigation in 120 days. From that point, it was almost 500 days before. So you could have gone to the, not to the Merchants of Protection Board, you could have gone to EEO and said, hey, I'd like you to sanction, because you regularly throw cases out for delays like this. You could have done that? I'm sorry, we could not have gone to the EEOC in that scenario. We could only go to the MSPB in a mixed-case appeal. We could not go to the EEOC in that point that you're addressing. One of the things you say you would have wanted was the investigation and the reports. Could you have gone to the board and said, could you please remand this back and order them to do it in a timely manner? What could have been done if, I suppose, if Mr. Jadu had gone past that 120 days, filed his MSPB appeal, he could have asked for sanctions at that moment. A sanction, perhaps, could have been, OK, agency, the judge could say, OK, agency, you haven't done this, you had a deadline, do an expedited investigation. But that's not a remedy. I mean, they've already missed the deadline. If the judge doesn't do that, then the employee, if they have an attorney, they're spending money on doing discovery for information that would have been in an investigation that should have been conducted. Relief, even under the EEOC cases that Chair Harris cited, there are, I mean, all types of relief are available in these circumstances, including dealing with discovery and other things, which gets me back to the earlier point we were making, that that all deals with the discrimination, right? And all those items you mentioned in reference from former Chair Harris, yes, they all could have been on the table, but the judge didn't consider it at all, essentially just denied it, saying your remedy is to request the MSPB appeal or file the MSPB appeal, so it didn't even really consider the merit of it. EEO doesn't have any authority over to sanction in a mixed case? I don't believe they would, because what would happen is... That was my point originally, was that seemingly, because it looks as if EEO polices its process vigorously. And in non-mixed... Right, don't they? And throwing a case out is frequent, or especially for an egregious case like this. That's true, in non-mixed cases where they have... The point is, what case stands for the proposition that they have no authority to sanction in a mixed case? Because the only... Case that says that? I don't, I can't think of a... Well, I was asking you why in this particular case you couldn't have simply said, hey, I've been sitting over here at EEO, you guys are way out of time. In a non-mixed case, you would have thrown this thing out, all I have to do is ask for it. I'm asking for it now. And you don't have a case that tells me you couldn't have done that? I don't think we would have had the... The EEOC would have jurisdiction if we decided after 120 calendar days... They had a jurisdiction over your case when it was over there, right? No, it's not... When he files his formal complaint, it's investigated by the agency, not the EEOC. It's investigated by the employing agency here, DHS. And they have control, it's never... He files his complaint with the board. Files his appeal after he files his discrimination complaint with the agency, he files his appeal with the board, correct. But he doesn't, until there's a... Does he get over to EEO to do the investigation? The agency's EEO or civil rights office does the investigation. It's not at the EEOC, in fact it doesn't get to the EEOC until after MSPB... Is it every mixed case? Yes. The EEOC regulations that are relied on in terms of the sanctions, were those subject to notice and comment rulemaking? I honestly don't know. I assume they would have been. All right, let's hear from the other side and we'll restore... Thank you. Good afternoon, your honors. May it please the court. I've been saying good morning all day. I want to start with the penalty piece because I think that's shorter and simpler, and then we can turn to the jurisdictional piece. So at appendix page 3788, that's the hearing testimony from the deciding official. He is asked point blank, why did you terminate Mr. J. Due? Sorry. Give us a chance.  3788. Okay. Got it. Thank you. And it's that entire page. At the top of the page, line three, the deciding official is asked point blank, why did you terminate Mr. J. Due even though the office of professional responsibility said he could have his security clearance back? And the deciding official explains exactly why. That his concerns were related to Giglio, as was discussed earlier this morning, and also his broader concerns about his trust in Mr. J. Due and being forthcoming both with his supervisors and with prosecutors in terms of both the positive and the negative information in a case. And so that is addressed specifically and explicitly by the deciding official in his testimony there. The board also recognizes- It's on direct, I assume. It feels nice enough that that's probably right. Do you know if there's any cross-examination on this point? I'm not sure, Your Honor. But this, I think, is certainly the most direct testimony where he addresses specifically sort of the existence of one does not undermine the penalty determination on the other. I'll note, similarly, the security clearance decision itself makes the inverse point that even though that deciding official, right, it's two different people applying two different standards and making two different decisions, the person who determined to give him back the security clearance also explicitly stated that that sort of is disconnected from any disciplinary action that he might face. And I have that. But it feels a little incongruous, right, that it's the same agency and a security clearance or the retraction of a security clearance is based on similar things. I mean, he lost his security clearance at the Department of State. So it's hard. The two are not completely separate and distinct in terms of the factors that one would be looking at in the agency as to whether security clearance is appropriate. Conceivably. But they are very different standards. And that is something that the administrative judge talked about in the decision. And that's- What would seem to be that the security clearance ought to be easier to get rid of than firing someone? When you say they're two different standards, don't you think instinctively one would think it ought to be harder to fire someone than it is to take- or require much more than it is to just take away the security clearance? I think they're looking just at sort of very different things. The security clearance- first of all, the security clearance process is supposed to be kind of a black box, right? Mr. J. Du, the thrust of his argument is that we can infer based on the fact that they gave him the security clearance that there was sort of positive aspects that we can infer from that. And I think the Supreme Court in Egan made clear that really we can't infer anything either from the grant or denial of the security clearance about the character of the person being considered. Whereas here, the lack of candor really goes to the heart of the agency's trust and confidence in Mr. J. Du's judgment and whether they could trust him to sort of be forthcoming. Right, but you ordinarily wouldn't think you'd grant a security clearance to someone you can't trust, right? I agree. But I think certainly they could fall together, and it would have been unsurprising if they both took away his security clearance and then also removed him. But ultimately, it is two different decision-makers who were making two different decisions based on different considerations. And the question here is whether substantial evidence supports the analysis that the deciding official did on his penalty consideration. And he went through all of the Douglas factors, and the board, I think it is pages 68 and 69, goes through where he went through the Douglas factors and credits that analysis and ultimately finds that the deciding official's testimony was credible and persuasive in terms of the Giglio concerns, in terms of his lack of trust in Mr. J. Du's judgment. And that is sufficient to support the... Under these circumstances, did the A.J. have to defer, and did the A.J. defer in any way to the analysis of the Douglas factors that was undertaken by the deciding official? I mean, I think there is some deference, yes. Ultimately, it is sort of a management decision, and the board also looks at whether the deciding official sort of reasonably considered the appropriate factors. Part of the argument today is that deference is not proper under these circumstances. What do you say to that? I disagree with that. But I think more importantly, the deciding official, excuse me, the administrative judge and the board sort of looked at the testimony that the deciding official gave and credited that testimony, right? So for example, on appendix page 70, the board says, moreover, at the hearing, deciding official Stanton credibly reaffirmed his reasoning while emphasizing the most important aspects of the removal decision, including the higher standard that applies to law enforcement, the lack of alternative sanctions, the risk of giglio impairment, and the absence of rehabilitation potential. He also credibly considered matters that weighed in appellant's favor, some of the mitigating factors. And on the next page, appendix 71, the board itself states that he finds that the agency's penalty determination falls within the parameters of reasonableness and is entitled to deference. But then he also states that lack of candor justifies a severe penalty, including potentially removal. So I think we have both the administrative judge recognizing that there is a level of deference that is due to the agency in terms of their management decisions, and also sort of independently weighing the evidence and concluding that a significant penalty, including a penalty of removal, is justified here. OK. Why don't you move on? Let's talk about jurisdiction. So they try to present this argument as a question of the board's authority to sort of oversee and impose sanctions for violations of regulations or statutes. And the problem is, is that all of those regulations and all of those statutes are exclusively and uniquely within the confines of a discrimination case and a mixed case appeal. The only types of cases before the board that this question of sanctions authority could possibly arise in is mixed cases. And we know from the Supreme Court that mixed cases, it's just a court or bust. This court does not have jurisdiction to look at that. So we've got kind of two different issues. The higher level issue is jurisdiction. The second is whether or not the board has the authority to do sanctions. So your view is we don't even reach that issue. Correct. The question of the scope of the board's authority is, if it's going to be litigated one day, it has to be litigated in district court and not in this court. Because it is sort of part and parcel of just mixed cases. It is— But the issue of sanctions could come up in a non-mixed case, right? So other types of sanctions, absolutely. So for example, Mr. J. Dew cites this string cite of case of non-precedential decisions in his reply where this court has looked at procedural issues in sort of formally mixed cases. But those procedural issues and the scope of that board authority there were things that sort of would be equally applicable to a purely adverse action appeal as it would in a mixed case. So for example, it was things like your deadline to petition for full board review. That is a deadline that's the same, whether it was a mixed case or an adverse action appeal. And so when they abandoned the discrimination piece of it, that procedural question remained. There's like, the board has rules about disclosures that you have to make in order to call witnesses and sort of procedural rules, the deadline, timing of hearings. All of these aspects of the board's authority are just as applicable to a purely adverse action appeal that is then reviewed to this court as it would be in a mixed case appeal. And so when we sort of— So when the board was—well, the board was mixed. But ultimately, their conclusion, the A.J.'s conclusion, which was sustained, I guess, on a tie vote, was that just on the sanctions piece, that we don't have the authority, we, the MSPB, don't have the authority to issue the sanctions for the timeliness issue that appeared in his discrimination claims. So I don't know that—so the A.J.'s decision, and that's at Appendix 89, he declines to issue sanctions. I don't necessarily read that decision by the A.J. as saying, I don't think I have authority to issue sanctions so much as, in my discretion, I'm not entering sanctions here. When Mr. J. Dew appealed that to the—or petitioned to the full board, the two members at the time sort of got into this debate that they then split on, on whether the board even had authority to issue sanctions in the first place. Obviously, if they don't have authority— But in either event, no matter what the board—what we're reviewing, we're reviewing the question of whether or not they have the authority to issue sanctions, or whether we're reviewing what you say the A.J. said, which is, I just don't think it takes work here. We don't have—your view is we don't have jurisdiction over either of those. Correct. Correct. All of that is uniquely, always, necessarily within the confines of a discrimination case, and therefore within the confines of a mixed case at the MSPB. It's a question that would never arise in a pure adverse action appeal that can then be appealed to this court. So— I think both sides think Harris helps them, the Harris case, in our Harris opinion. So why don't you give us the reason why you think it helps you? Sure. I mean, I think, really, it's sort of Harris-Redd from following Klockner and Perry, where the—you know, so I'll start with the Supreme Court. I think the Supreme Court sort of rejected the very distinction that they're relying on, which is that there's some difference between the merits of the discrimination case, i.e., were you discriminated against or weren't you, as opposed to sort of associated procedural or jurisdictional issues. Klockner and Perry said, no such distinction. If it's discrimination, we funnel that to district courts. Harris follows those two decisions and holds that even if you sort of started out with a mixed case, if you unconditionally abandon the discrimination portion of your formally mixed case, and then what you're left with is just the adverse action appeal that you could have brought sort of on its own, then the court has jurisdiction over that remaining piece. But— And his argument is that's what he has here. Except that the procedural issues that he wants to raise with it are part of that discrimination piece. They only exist within the confines of the discrimination half of the mixed case, right? So a mixed case is the adverse action appeal plus a discrimination claim. And everything— So you see it as though he's trying to enforce the procedural anti-discrimination law. Exactly. And we know from Klockner and Perry that sort of whether it's procedural, whether it's substantive, whether it's jurisdictional— All Klockner really says is the procedure counts as much as substance for purposes of whether I want it to be in the federal circuit or in the district court. Right. And so if it's sort of part and parcel of your discrimination claim, you've got to go to district court for that. You can't come here for that. Judge Clevenger, you'd asked a question— You used the word related in your brief. You said this is because it was the language used in our non-PREC opinion. And I think his argument is related is too broad. I think actually it's not broad enough. And that it's—because in this case, it's not just that it's related to the discrimination claim. It's that it is exclusively within the confines of the discrimination. Why didn't you say that in your brief instead of related? You know, I think we probably thought related was a good word at the time that we wrote it. But I think it's even more— I think our basic argument is that even though he has attempted to waive off discrimination pursuant to our rules, he hasn't done it because he still has a discrimination claim, procedural discrimination claim. Sure. Yes. I think it's sort of—one of two things is true. Either—or I guess maybe more specifically, it's that in order to unconditionally abandon his discrimination claim to be here, that also has to abandon this sanctions argument because it's part of his discrimination case. And so I take him at his word of his unconditional abandonment, and therefore this issue is no longer before the court. If the court concludes that he didn't waive that piece, then I think it's still a mixed case and this court doesn't have jurisdiction over any part of it. Do you agree that when he sought sanctions, he was seeking them with respect to both the adverse action part of his mixed claim and the discrimination part of it? I mean, he was seeking a default judgment, so that would sort of cover everything. But it was—I think the more critical piece is that it is based entirely on EEOC authority, his argument, which by the way has changed in the past year. And it is entirely based on statutes and regulations that are about the discrimination claims. And it would—like this aspect of board authority can only ever exist in a mixed case. And therefore, whatever judicial review there is of that question, it has to be in district court and not in this court. You've got rebuttal time. Is there rebuttal time left? Thank you. Well, we still have three minutes of rebuttal. Thanks. Thank you. Just really two points. First, with respect to the signing official's testimony, and specifically in Appendix 3788, which was referenced by counsel for the government, at the very bottom of that page, Mr. Staten, the signing official, was asked, quote, and when you made a decision, did you rely in any way on the OPR's decision to get—to give Mr. Jadot his security clearance? No. So he didn't consider it at all. What does he mean to say when he—did he rely on it? I'm sorry, I didn't hear the first part. Well, he said—they said to him, did you rely on their decision to give him his security clearance? Well, what would it have meant if he had replied? If he had relied? If he had considered it? Then you could say that— Rely is—consider and rely are two different things. I think you could argue—I don't have a dictionary in front of me, but I think you could— If you relied on it, wouldn't you assume that that meant that you deferred it?  You deferred to it? Well, he didn't, and we know that. And he explained the reasons why, because he made his independent judgment on the thing of Canada and their two different proceedings. But I don't think he explained that he didn't consider the grant of the security clearance in evaluating the penalty. You put a lot of weight on the word rely. Well, not just that. There's also the decision letter, which doesn't mention the grant of the security clearance, and the Douglas factors analysis that he did that's in the appendix that doesn't mention the PSU security clearance. So it's not just the rely. Well, I made my point, so unless there's other questions. Well, do you agree that on the jurisdictional question, that the types of board authority that you're saying were violated here, they're only implicated in, they only apply to mixed cases? You heard what your friend on the other side said. She drew a very strong distinction that all the statutes, all the regulations, everything that you based your sanctions on, as I understood her, only apply in mixed cases. I don't think so, because 1201.43. Which one? I'm sorry, 1201.43, the sanctions. 1201.43? Correct. It doesn't say anything about only in non-mixed cases. It says all the cases that the board has, and that includes mixed cases, and the EOC, going kind of back to your point, Judge Clevenger, they don't have jurisdiction over appealable action, otherwise appealable actions like the board does. Okay, thank you. Thank you very much. On both sides, the case is submitted.